# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **WENDY'S OF BOWLING GREEN, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | |
| **vs.** | ) | **CASE NO. 3:10-01043** |
| | ) | **JUDGE CAMPBELL/KNOWLES** |
| | ) | |
| **MARSH USA, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This matter is before the Court upon a document filed by Plaintiff headed, "Motion for Leave to Amend Complaint Pursuant to Fed. R .Civ. P. 15 and For Leave to Serve a Supplement to the Expert Report of Plaintiff's Expert Computing Damages in Tort Caused by Defendant's Negligence and Negligent Misrepresentations." Docket No. 76. Defendant has filed a Response in Opposition to the Motion. Docket No. 77. Plaintiff has filed a Reply (Docket No. 82), and Defendant has filed a Sur-Reply (Docket No. 86).

The circumstances of this case have been set forth by Judge Campbell in a Memorandum addressing Defendant's Motion for Summary Judgment. Docket No. 61. Briefly, and essentially, Plaintiff avers that it hired Defendant to be its insurance broker and risk manager. Plaintiff contends that it directed Defendant to procure flood insurance for one of its restaurants in Clarksville, Tennessee. Defendant directed Plaintiff to pay the premium for the flood insurance when it received a final invoice from the insurance company. According to Plaintiff, Defendant submitted an incorrect address for Plaintiff to the insurance company and, therefore,

Plaintiff never received the bill and never paid the premium. Unfortunately, the restaurant was severely damaged by record floods that occurred in Middle Tennessee in May of 2010. The insurance company denied coverage because the premium had never been paid.

Plaintiff's original Complaint and Amended Complaint (Docket Nos. 1, 7) contained counts for breach of fiduciary duty, breach of contract, negligence, and violation of the Tennessee Consumer Protection Act. Upon Defendants' Motion for Summary Judgment (Docket No. 30), Judge Campbell dismissed Plaintiff's claims for breach of fiduciary duty and violations of the Tennessee Consumer Protection Act. Docket No. 62. Plaintiff's claims for breach of contract and negligence remain pending.

The instant Motion to Amend was filed July 19, 2012, more than five (5) months after Judge Campbell entered his summary judgment Memorandum and Order.

The Initial Case Management Order entered in this case on December 27, 2010 (Docket No. 11), established a deadline for filing Motions to Amend the pleadings of March 27, 2011. The Initial Case Management Order also required the disclosure of Plaintiff's expert reports by June 17, 2011, with any and all supplements to expert reports to be filed by August 19, 2011. Thus, the instant Motion was filed almost sixteen (16) months after the deadline for filing Motions to Amend the pleadings and approximately thirteen (13) months after the deadline to supplement expert reports.

Fed. R. Civ. P. 16(b)(4) states in relevant part, "A schedule [in a scheduling order] may be modified only for good cause and with the judge's consent." Good cause is measured by the movant's "diligence in attempting to meet the case management order's requirements." *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003) (citation omitted). In order to show good cause,

the movant must demonstrate that, despite its diligence, it could not meet the original deadline. *Id*. at 907. As the *Leary* Court stated, "Once the scheduling order's deadline passes, a plaintiff first must show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a)." *Id*. at 909 (citations omitted).

In the instant Motion, however, Plaintiff does not address the "good cause" requirement beyond simply stating, "Good cause exists for granting the relief requested in this Motion." Docket No. 76, p. 2. Plaintiff's main argument appears to be that the granting of the relief requested will not unduly prejudice Defendant. Docket No. 76, p. 3.

Plaintiff further argues that the deadline for filing Motions to amend the pleadings of March 27, 2011, "was more than one month before the first deposition even was taken in this case." As discussed above, however, that deadline was set in an Order entered December 27, 2010. Obviously, Plaintiff could have taken depositions long before March 27, 2011.

Plaintiff further argues that it was not until approximately six (6) months after the deadline had passed when its expert submitted his original report on September 9, 2011. Plaintiff states:

> It was not until Plaintiff received its expert's original report computing the recoverable damages at $252,371, based upon the provisions of the hypothetical insurance policy that was never placed by [Defendant], that Plaintiff learned of the falsity of Defendant's negligent misrepresentations that [Plaintiff] had justifiably relied upon to its detriment.

Docket No. 76, p. 3.

It is difficult for the Court to understand exactly what that sentence means. Nevertheless, Plaintiff obviously could have required its expert to submit his original report prior to the

deadline for filing Motions to amend the pleadings.

Plaintiff seeks to amend its Amended Complaint to include a claim that Defendant breached a January 25, 2010, "engagement letter agreement." *Id.*, p. 1. With regard to this situation, Plaintiff's Motion states:

> The breach of contract claim in the Amended Complaint does not refer to the January 25, 2010, engagement letter agreement attached to the proposed second Amended Complaint as Exhibit 2, *because Plaintiff had not supplied that agreement to its counsel prior to the time that the original Complaint and Amended Complaint were filed with the Court*. From the outset of this litigation, that document was available to Defendant's counsel and the January 25, 2010, engagement letter agreement attached to the proposed Second Amended Complaint as Exhibit 2 was fully explored by Defendant's counsel in discovery during the deposition of Mr. John Hughes individually and as Rule 30(b)(6) representative for [Plaintiff] . . . . taken on April 28, 2011.

*Id.*, p. 4 (emphasis added).

In other words, Plaintiff apparently seeks to add claims based on a January 25, 2010, "engagement letter agreement," which Plaintiff's counsel was not aware existed at the time they filed the original Complaint and the Amended Complaint. According to the proposed Second Amended Complaint, however, Defendant sent Plaintiff this "engagement letter agreement" on January 25, 2010. Docket No. 76-1, p. 4. Thus, it is clear that Plaintiff itself was aware of the letter agreement on January 25, 2010. Apparently, Plaintiff simply did not supply that document to its counsel.

Tellingly, Plaintiff never mentions when *its counsel* discovered the existence of the January 25, 2010, engagement letter agreement. Based upon the above, however, they were certainly aware of that document on April 28, 2011, when the deposition of Mr. Hughes was taken. But the instant Motion to Amend was not filed until 15 months later on July 19, 2012.

4

Plaintiff also seeks to amend its Amended Complaint to include a claim for negligent

misrepresentation. Docket No. 76, p. 4. Plaintiff states:

> Justice requires that Plaintiff's claims for negligence be allowed to
> be amended to include its claim for negligent misrepresentation.
> Under Tennessee law, a claim for negligent misrepresentation is an
> action in tort determined by the general principles of the law of
> negligence. In the January 22, 2010, schedule made part of
> Exhibit 2 to the proposed Second Amended Complaint,
> [Defendant] negligently and falsely misrepresented that the
> insurable value for the Riverside Wendy's building and business
> personal property was $730,000 – $430,000 for the building and
> $300,000 for the building contents. This was almost three times
> the amount of the insurable value which could be recovered under
> the hypothetical flood insurance policy that [Defendant] failed to
> place. Further, [Defendant] through its Vice-President Bryan
> Barger negligently misrepresented to John Hughes, then COO of
> [Plaintiff], that [Defendant] was increasing the flood coverage on
> the Riverside Wendy's to $730,000 – $430,000 on the building and
> $300,000 on the contents of the building. He maintained this
> misrepresentation, even after the flood.

Docket No. 76, p. 4-5.

Candidly, the Court does not understand Plaintiff's proposed claim for negligent

misrepresentation. In any event, however, Plaintiff knew of the facts set forth above on January

25, 2010, when Defendant sent Plaintiff a copy of the "engagement letter agreement," which is

Exhibit 2 to the proposed Second Amended Complaint. Additionally, the alleged

misrepresentation that occurred after the flood occurred on May 3, 2010. Docket No. 76-9.

Once again, Plaintiff offers no explanation as to why this proposed claim was not asserted within

the time frame allowed.

Furthermore, as discussed above, the Initial Case Management Order was entered

December 27, 2010. Docket No. 11. On April 27, 2011, the parties submitted a Joint Motion to

Amend the Case Management Order, which extended every deadline set forth in the Initial Case

Management Order except the deadline for filing Motions to amend the pleadings (and except the deadline for initial disclosures). Docket No. 26. The Court granted that Motion the following day. Docket No. 27.

On March 20, 2012, Plaintiff filed a Motion to Continue the Trial (Docket No. 71), which was granted in part on March 22, 2012 (Docket No. 72). On June 6, 2012, the parties submitted a "Consent Motion for Continuance of Trial" (Docket No. 73), which Judge Campbell granted the same day (Docket No. 74). Neither of the Motions to Continue the Trial said anything about revising the deadline for filing Motions to amend the pleadings.

In short, Plaintiff has not come close to making a showing of "good cause" required to amend its Complaint as is required by Fed. R. Civ. P. 16(b)(4). The proposed Second Amended Complaint is untimely, and the allowing of its filing would seriously prejudice Defendant, which, as discussed above, has already filed a Motion for Summary Judgment that has been granted in part.

As the Court understands the second part of the Motion with regard to supplementing its expert's report, that supplementation is necessary only if the Court grants the Motion to Amend.

For the foregoing reasons, the instant Motion for Leave to Amend and Motion for Leave to Supplement Plaintiff's Expert Report (Docket No. 77) should be DENIED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of

service of this Report and Recommendation can constitute a waiver of further appeal of this

Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985),

*reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.


E. Clifton Knowles
United States Magistrate Judge